# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT PANTON,** | : | CIVIL ACTION NO. 1:11-CV-1845 |
| **Plaintiff** | : | (Judge Conner) |
| v. | : | |
| **CAPTAIN BRECKON, RONNIE HOLT,** | : | |
| **Defendants** | : | |

## **MEMORANDUM**

Robert Panton ("Panton" or "plaintiff"), an inmate formerly housed at the United States Penitentiary at Canaan ("USP Canaan"), Waymart, Pennsylvania, filed a complaint alleging <u>Bivens</u>[1] claims, 28 U.S.C. § 1331. (Doc. 1.) He is presently proceeding *via* an amended complaint. (Doc. 9). Named as defendants are Captain Breckon and Ronnie Holt, former Warden of USP Canaan. (<u>Id.</u> at 1.)

Presently ripe for disposition is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Doc. 18), and plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 33.) For the reasons set forth below defendants' motion to dismiss will be granted in part,

---

[1] <u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971). <u>Bivens</u> stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." <u>Butz v. Economou</u>, 438 U.S. 478, 504 (1978).

and the motion for summary judgment will be granted in part. Plaintiff's motion for summary judgment will be denied.

I. **Motion to Dismiss**

A. **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step,

2

"the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

When the complaint fails to present a prima facie case of liability, however, courts should generally grant leave to amend before dismissing a complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116–17 (3d Cir. 2000). "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." Phillips, 515 F.3d at 245 (citation omitted). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).

**B.     Allegations of the Complaint**

Panton alleges that "Warden Holt is responsible for the procedures and policy implimentation [sic] and to assure they are being carried out, to make sure there is no deliberate indifference to serious medical needs.  Captain Breckon is in charge fo security staff that secure prisoners and carry out policies to ensure enforcement that there is no deliberate indifference to medical needs."  (Doc. 9, at 2.)  He specifically raises the following four claims in his amended complaint:  (1) "Warden Holt failed to assure policy or enforcement (Captain) that surgeon's #1 medical requirement stated was bath before eye surgery (contamination concerns) be followed"; (2) "on 2/22/11 Warden had policy that had Panton suffering with Pneumonia, secured in shackles and handcuffs already; reenforced with black box on handcuffs interfering with IV medication being administered for hours, due to captains [sic] memo in ambulance and emergency room that cut circulation causing pain and suffering unnecessarily"; (3) on February 25, 2011, after returning from a four day hospital stay due to pneumonia, Panton was forced to walk outside in the rain to reach his housing unit rather than being permitted to take an indoor corridor; (4) "On 6/25/11 Warden's policy and Captain's enforcement, obstructed medical staff from examing [sic] Panton for four days while poisoned by Salmonella from food ate in the chow hall, suffering fever, vomitting [sic], diarrhea, dehidration [sic], and headachs [sic] while locked in a cell for 24 hours a day, with no medical attention. . . ."  (Doc. 9, at 3.)

4

**C.     Discussion**

A Bivens action is the federal counterpart to an action filed under 42 U.S.C. § 1983.  See Paton v. LaPrade, 524 F.2d 82 (3d Cir.1975); Farmer v. Carlson, 685 F. Supp. 1335, 1338 (M.D.Pa. 1988).  Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  See 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

There is no doubt that the Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103–105 (1976).  In order to set forth a cognizable claim, plaintiff must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need.  Estelle, 429 U.S. at 104; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir.1 999).  A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk

of serious harm and fails to take reasonable steps to avoid the harm. Farmer v. Brennan, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." Estelle, 429 U.S. at 104–05.

Defendants argue that two of Panton's denial of adequate medical care claims, that defendants denied him a shower or bath prior to being transported out of the facility for eye surgery, and delayed his access to medical care for food poisoning, are subject to dismissal on the grounds that defendants lack personal involvement.[2] Individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of *respondeat superior*." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988); see also, Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08. Alleging a mere hypothesis that an

---

[2]Defendants concede that Panton exhausted the administrative review process with respect to these claims. (Doc. 24, at 10-11.)

6

individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208.

Panton describes Warden Holt's role as responsible for the "procedures and policy implimentation [sic] and to assure they are being carried out, to make sure there is no deliberate indifference to serious medical needs." (Doc. 9, at 2.) Captain Breckon's role is identified as "in charge of security staff that secure prisoners and carry out policies to ensure enforcement that there is no deliberate indifference to medical needs." (Id.) It is clear that Panton is seeking to impose liability on the defendants in their roles as supervisors and as policy makers. He fails to set forth specific instances of constitutional misconduct, and he does not allege that either defendant knew of, and acquiesced in, or played an affirmative part in the denial of medical care or directed that he be denied or delayed medical attention.

Moreover, prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F .2d 64, 69 (3d Cir. 1993). "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir.2004) (discussing Durmer, 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment

7

scienter requirement of deliberate indifference." Id. at 236. There is no doubt that Panton was under the care of a medical expert during both incidents. These claims are therefore subject to dismissal.

## II. Motions for Summary Judgment

Defendants seek an entry of summary judgment on the remaining claims, that Panton was forced to walk to his housing unit in the rain following hospitalization for pneumonia, and that the black box over the handcuffs interfered with the administration of IV medication, on the ground that he failed to properly exhaust the administrative review process with respect to both claims. (Doc. 24, at 11.)

### A. Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

### B. Statement of Material Facts

Defendants concede that Panton properly exhausted with respect to the alleged failure to provide him with a shower prior to eye surgery as well as his alleged delayed access to medical care while suffering from food poisoning. (Doc. 24, at 10-11.) Conversely, they contend that he failed to properly exhaust the claim that he was forced to walk in the rain to his housing unit following hospitalization for pneumonia and the claim that the black box on handcuffs interfered with administration of IV medication. (Id. at 11.)

The Federal Bureau of Prisons ("BOP") has an administrative remedy procedure through which inmates can seek formal review of an issue relating to any aspect of his or her confinement. (Doc. 25, ¶ 84 citing 28 C.F.R. §§ 542.10-542.19; Doc. 29, ¶ 84.) In order to exhaust appeals under the administrative review procedure, an inmate must first informally present his complaint to staff, and staff is to attempt to resolve the matter. (Doc. 25, ¶ 85, citing 28 C.F.R. § 542.13; Doc. 29, ¶ 85.) If the informal resolution is unsuccessful, then the inmate must execute the appropriate form to bring the matter to the attention of the warden, within twenty calendar days of the date of the incident. (Doc. 25, ¶ 86; Doc. 29, ¶ 86.) If the inmate is dissatisfied with the warden's response, he may then appeal to the Regional Director within twenty calendar days. (Doc. 25, ¶ 87, citing 28 C.F.R. § 542.15; Doc. 29, ¶ 87.) If the response of the Regional Director is not satisfactory, the inmate may

9

then appeal to the General Counsel of the BOP within thirty calendar days, which office is the final administrative appeal level in the BOP. (Doc. 25, ¶ 89; Doc. 29, ¶ 89.) No administrative appeal is considered to have been fully exhausted until considered by the BOP's General Counsel. (Id.)

In the ordinary course of business, computerized indices are kept of requests for administrative review filed by inmates. (Doc. 25, ¶ 90.) On or about February 6, 2012, a search of BOP records was conducted to determine whether Panton exhausted the administrative process as to each of his claims. (Id. at ¶ 92.) This review revealed that "from February 22, 2011 (the date of the earliest incident alleged in the Complaint) to February 6, 2012 (the date of the search), he had filed nineteen 19 administrative remedy requests and/or appeals." (Id. at ¶ 93.) Of the nineteen administrative requests for relief, four were related to the failure to provide him with a shower prior to his eye surgery. (Id. at ¶ 94.) Of the remaining fifteen filings, four concerned the food poisoning incident. (Id. at ¶ 96.)

Defendants contend that he filed "no administrative remedy requests and/or appeals regarding the policies and/or practices which allegedly resulted in interference with intravenous medication at an outside hospital caused by using handcuffs." (Id. at ¶ 97.) Panton states that the "[a]dministrative remedy procedure was exhausted fully." (Doc. 28, at 2.) Panton made an attempt at informal resolution regarding these issues. (Doc. 28-1, at 18-22.) He chose not to informally resolve the matter. (Id. at 22.) He filed a "Request for Administrative Remedy" on March 9, 2011. (Id. at 11; Doc. 34, at ¶¶ 14-15.) The request was

10

rejected on March 14, 2011, because he included too many continuation pages and failed to clearly state the remedy he was seeking. (Doc. 28-1, at 10.) He resubmitted the request on March 17, 2011, and it was rejected because he failed to state the remedy he was seeking. (Id. at 9, 11.) He submitted the request a third time on March 22, 2011. (Id. at 11.) His request was again rejected with the remarks that "The remedy you request my [sic] be a remedy that the institution can consider; compensatory damages can only be asked for in a civil suit." (Id. at 8.)

Panton appealed the third denial to the Northeast Regional Office, which directed him to resubmit his BP-9 at the institution level for consideration on the merits as it was erroneously rejected. (Doc. 28-1, at 13-15; Doc. 34, at ¶¶ 16-17.) Rather than resubmit his BP-9 at the institution level, he appealed to the Central Office. (Doc. 28-1, at 17.) The Central Office rejected the appeal stating "You submitted your request or appeal to the wrong level." (Doc. 28-1, at 16; Doc. 34, at ¶¶ 16, 18.) "You must complete the appeal process at the institution and regional levels before appealing to the central office." (Id.)

**C.    Discussion**

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. See 42 U.S.C. § 1997e(a); Booth v. Churner, 206 F.3d 289, 291 (3d Cir. 2000). It has been made clear that the exhaustion requirement is mandatory. See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth, 532 U.S. at 741 (holding that

11

the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000) (same). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

In an attempt to excuse the exhaustion requirement, he argues that defendants were attempting to sabotage and frustrate his efforts to utilized the administrative review process. (Doc. 28, at 3; Doc. 35, at 2.) Courts have invariably held that affirmative misconduct by prison officials, designed to impede or prevent an inmate's attempts to exhaust, may render administrative remedies unavailable. See Todd v. Benning, 173 F. App'x 980, 982-83 (3d Cir.2006) (expressing approval of Eighth Circuit's holding in Miller v. Norris, 247 F.3d 736 (8th Cir. 2001)) that administrative remedies were not available where prison officials "purportedly prevented prisoner from employing the prison's grievance system"). Examples of affirmative misconduct on the part of prison officials include: (1) threatening a prisoner in an attempt to thwart the prisoner's attempts to exhaust, see Harcum v. Shaffer, No. 06-5326, 2007 WL 4167161, at *5 (E.D.Pa. Nov.21, 2007) (finding administrative remedies unavailable where prison officials threatened plaintiff with "opposition to his future prerelease application, parole, or outside work detail if he did not withdraw his grievance"), (2) refusing to provide appropriate grievance forms in response to inmate inquiries, see Mitchell v. Horn, 318 F3d 523, 529 (3d Cir.

12

2003), (3) advising an inmate that his or her situation does not require a grievance, see Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002) (finding that administrative remedies were unavailable to plaintiff who had been advised by prison official that he must wait until the end of the prison's investigation before filing a grievance), and (4) failing to file or respond to a prisoner's grievances, see Camp v. Brennan, 219 F.3d 279, 280-81 (3d Cir. 2000) (finding that administrative remedies were unavailable where prison officials refused to file plaintiff's grievances regarding their coworkers).

While it is true that, according to defendants, the third rejection of Panton's request for administrative review was erroneous, this rejection did not render the administrative review process unavailable. In fact, the regional level recognized that the request was erroneously rejected, contacted the institution concerning the error and directed Panton to re-file the request for consideration on the merits. Instead, he chose to appeal to the Central Office, which rejected the appeal on the basis that the request must first be considered at the institution and regional levels of review. Based on the provision submitted by Panton, 28 C.F.R. § 542.17, "Resubmission," the only time the rejection of a request or appeal may be appealed is when the prisoner is not given the opportunity to correct the defect and resubmit it. (Doc. 36, at 2.) Panton was clearly afforded the opportunity to resubmit his request. While the erroneous rejection of his request for review at the institution level is unfortunate, there is no indication or suggestion that prison officials engaged in any affirmative misconduct such that they obstructed, hindered,

13

delayed or prevented plaintiff from pursuing administrative relief. Banks v. Roberts, No. 1:06-CV-1232, 2007 WL 1574771, at *5 (M.D. Pa. May, 31, 2007) (holding that while the plaintiff alleged that the defendants "obstructed" his efforts to pursue administrative remedies by refusing to provide proper forms and instructing others not to provide the necessary forms, the grievance process was available to him, and therefore, plaintiff's claim was procedurally defaulted for failure to comply with the process); Nyhuis, 204 F.3d at 71 (stating that there is no futility exception to the exhaustion requirement under any circumstances).

Nor is there any merit to plaintiff's contention that the procedures were inconsistent with BOP guide "An Inmate's Guide to Administrative Remedy Requests at Federal Prisons." (Doc. 28, at 3-4; Doc. 28-1, at 25-32.) Where a grievance procedure is set forth in an inmate handbook, as is the case here (Doc. 28-1, at 25-32), a prisoner is required to avail himself of those administrative remedies in order to satisfy the mandatory exhaustion requirement of the PLRA. Concepcion v. Morton, 306 F.3d 1347, 1354-55 (3rd Cir. 2002) (reversing the district court's decision and directing dismissal of state court prisoner's complaint for failure to exhaust administrative remedies pursuant to § 1997e(a) despite the fact that inmate handbook had not been formerly adopted by New Jersey Department of Corrections).

A party opposing summary judgment must come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas, 331 F. Supp. 2d at 315; FED. R. CIV. P. 56(e). This evidence must be

14

adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Panton has failed to meet his burden with respect to the administrative exhaustion of his Bivens claim that he was forced to walk to his housing unit in the rain following hospitalization for pneumonia and the claim that the black box over the handcuffs interfered with administration of IV medication failure to protect claim. Defendants are therefore entitled to an entry of summary judgment on these claims. Plaintiff's motion for summary judgment will be denied.

### III. Conclusion

For the foregoing reasons, defendants' motion to dismiss (Doc. 18) will be granted in part, and the motion for summary judgment (Doc. 18) will be granted in part. Plaintiff's motion for summary judgment (Doc. 33) will be denied.

An appropriate order follows.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:       March 27, 2013

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT PANTON,** | : | CIVIL ACTION NO. 1:11-CV-1845 |
| Plaintiff | : | (Judge Conner) |
| v. | : | |
| **CAPTAIN BRECKON, RONNIE HOLT,** | : | |
| Defendants | : | |

## **ORDER**

AND NOW, this 27th day of March, 2013, upon consideration of defendants' motion to dismiss and for summary judgment (Doc. 18), and plaintiff's motion for summary judgment (Doc. 33), and in accordance with the foregoing memorandum, it is hereby ORDERED that:

1. Defendants' motion to dismiss (Doc. 18) is GRANTED with respect to the claims that plaintiff was denied adequate medical care when he did not receive a shower prior to being transported out of the facility for eye surgery, and that he was delayed access to medical care for food poisoning

2. Defendants' motion for summary judgment is GRANTED with respect to plaintiff's claims that he was forced to walk to his housing unit in the rain following hospitalization for pneumonia, and that the black box over the handcuffs interfered with the administration of IV medication. The Clerk of Court is directed to ENTER judgment in favor of defendants and against plaintiff on these claims.

3. Plaintiff's motion for summary judgment (Doc. ) is DENIED.

4. The Clerk of Court is directed to CLOSE this case.

5. Any appeal from this order is DEEMED frivolous and not in good faith. <u>See</u> 28 U.S.C. § 1915(a)(3).


                                            <u>S/ Christopher C. Conner</u>
                                            CHRISTOPHER C. CONNER
                                            United States District Judge